Gerald Lackey v. Gerald Lackey Gerald Lackey v. Gerald Lackey Gerald Lackey v. Gerald Lackey Gerald Lackey v. Gerald Lackey All right. This is Whatley v. Lackey. Mr. Callahan. Yes, Your Honor. Good morning. Matthew Callahan from the ACLU of Virginia on behalf of Plaintiff Appellant Curtis Whateley. The First Amendment presumptively binds government conduct, and the government speech doctrine represents a narrow exception from that for cases where the government is required to express a view or a message in the implementation of its program. The personalized license plate program created by Virginia here does not bear the hallmarks of the government speech doctrine. They opened it up for drivers to create their own personalized message, and drivers have taken advantage of that to the extent of 930,000 plates circulating with personalized messages requested by over 11 percent of the drivers in Virginia. This is paradigmatic of the kind of public forum that drivers are able to take advantage of First Amendment protections, and speakers in a number of different contexts have those protections. Aren't you, Mr. Callahan, though, it seems to me that as a threshold matter, you're asking us to consider this as a message that the drivers are conveying. Why isn't this simply an action by the government to say, if you want to substitute your own identification for the government-issued alphanumeric identification, why isn't it simply a substitution of identification? Why is this necessarily a message? It seems to me you're baking in to your analysis that this is a message, and you've got to explain to us first why it's a message rather than simply an alternate form of government identification. Yes, Your Honor. Well, I'll note that in the beginning, the personalized license plate program itself identifies these as messages and states that drivers can request their own message. That's the language the government uses to refer to the personalized character combinations here. Right, but I'm asking you why it's a message as opposed to simply an alternate form of identification on the government plate. Well, Your Honor, there is an expressive element to the requested character combination. I think the whole purpose of the complaint in this case was to eliminate Mr. Waitley's ability to express that message about law enforcement in the nation. And the burden is actually on the government in a government speech case to show that it was expressing messages through the medium that it's using in order to take advantage of the exemption from the First Amendment, whereas a private speaker is presumed to have First Amendment rights. So I think it's a reversal of the burden, first of all, to say that Mr. Waitley has to demonstrate that there is an expressive element to his message, but I think that's clearly present here. And the Supreme Court in the Battal case pointed out that the brevity of trademarks, for instance, was not incompatible with the determination that those trademarks were expressive in nature and were able to take advantage of the First Amendment. So we're dealing here with, again, like a series of characters and numbers that had great personal meaning to Mr. Waitley, as he's alleged, and were perceived as having that meaning by the complaint, and indeed were actually revoked by the government on the basis that it expressed content violating their guidelines, which, again, depends on the government interpreting those license plate characters as expressing a message. So I think all across the board we have a message. We have Mr. Waitley's message that's at issue in this case. And while this case shares some aspects with the Walker case, which considered license plate designs, that is, the graphics and the slogans that states place on license plates, it also is meaningfully different for purposes of the factors of the government's speech analysis. And I'll just walk through those factors quickly. The history of the expression at issue, the public's likely perception of the expression at issue and who was speaking, and then lastly, whether the government directly controlled or shaped the expression at issue. All three of these differ meaningfully from the Walker analysis that the District Court and the Commissioner rely on here. Under the history of license plate designs, as opposed to character combinations, there's a rich history of states putting their own messages on license plates, including through legislative acts, through commissioning designs from private parties. And that history guided the Court to find that the private third party submitted designs on the license plates would not be distinguishable from both a reasonable person's perception of the license plates and the history as being different from those designs. For example, the state itself, through the legislature, commissioned a license plate that said Mothers Against Drunk Driving to celebrate a local community group in Texas. But a third party submitted design, submitted to the license plate program that was at issue in Walker, celebrated the Rotary International Club. From a reasonable observer's perspective, they wouldn't know whether a plate celebrating one civic institution was requested by a personal driver, and therefore private speech, or if it was commissioned by the legislature and therefore was paradigmatic state speech. In this record, before this Court, there is no expressive dimension to any license plate character combination requested by the state of Virginia, either now or all through its history of issuing license plates. The license plate functions merely as a kind of fingerprint to identify the vehicle. And fingerprints themselves, of course, are not expressive speech. Well, Walker was, I believe, that was a 5-4 decision. Yes, Your Honor. And then the Supreme Court in Tam went on to say that Walker is the outer limit of the government's speech doctrine. Yes, Your Honor. And this certainly exceeds the boundaries of the Walker decision. In Walker, we were dealing with 350 license plate designs, and that's the entire number of license plate designs. That includes all of the ones that were issued by the state, in addition to those that the third parties submitted through the private program. Why do numbers make a difference in terms of the analysis? Because the Supreme Court has said they do. In both Summum and in Tam, the Supreme Court found that the number of elements there was relevant to the analysis. In Walker, it said the precise number is not dispositive. But nonetheless, in Tam, the Court considered that there were over 2 million trademark entries in the Federal Registry, and found that that mitigated against a finding of government speech. Because the government was babbling prodigiously, it was contradicting itself, it was hard to imagine the government meaningfully intending to communicate every one of those 2 million messages. We have nearly a million messages here circulating on the streets right now, and that's not including historical plates that were issued before, the plates that might be issued subsequently in the program. So this certainly looks on orders of magnitude, much more like the babbling of Mattal in Tam versus Tam than it does the limited number of license plate designs in Walker, the dozen monuments in Summum, and the other cases where the government has found, or excuse me, the Court has found government speech. I'd just like to briefly address the control element here, because I think there are meaningful differences there between the Walker analysis and the analysis of the Virginia's program. So the Walker guidelines that the Board was using to issue the personalized license plate designs in Walker had much more discretion baked into them. They were allowed to reject any plate that was offensive to any member of the public, which is the searching inquiry into the content of the license plate. The guidelines in this case are much more mechanical. They involve terms of art like profanity. The outlines here are much more of what? I just didn't hear what you said. Mechanical. They are terms like expiratory, profane, obscene, terms that have a legal meaning that the Board can use to determine the boundaries of when it's going to exercise its discretion. The Board is not being asked to make independent determinations about whether or not a license plate is appropriate. In Walker, the Board that was approving the license plate designs had public hearings at which they took evidence. They received letters from legislators about whether or not plates were important, and they made their own determination about whether offensive plates should be issued. For instance, there were public objections to the Buffalo Soldiers plate at the same hearing where they rejected the Sons of Confederate Veterans plate, yet the Board decided to issue the Buffalo Soldiers plate and reject the Sons of Confederate Veterans plate. What are you saying about the exercise of discretion? That there was more discretion being exercised in Walker or less? Yes, Your Honor, more discretion. So the standard for this third element of the government speech test is that there has to be actively, the government has to actively have controlled or shaped the speech. Again, the shaping seems to happen in the court's analysis at the stage of the creation of the speech. So in Shurtleff, they found that because the private parties had created the designs on the flag, that was the shaping of the expression. That's clearly not present here because the private people who request the license plate are the ones who choose the characters and the numbers that go into the personalized character combinations. But the question of whether the guidelines themselves are enough to create active control over the speech is what the government's asserting here. That's what the district court relied on. And I'm just pointing out that the guidelines there do not actually control the content. They don't invite the board to be a judge of whether or not the content is appropriate in the way that the Walker guidelines did. Can I ask you a question that is somewhat related? Which is one of the things that strikes me about this case is that the government's speech question is maybe harder than the second question, which is assuming it's private speech, how does the forum analysis come out? And I guess I'm just trying to figure out what the end game is here and what's really at stake. Because I know you want us to put off the public forum analysis and I understand all the reasons why that makes sense. I'm really just trying to figure out what is at stake in this case. And is there really any chance that the state couldn't prevail just by saying, fine, it's private speech and we've opened a non-public forum on our license plates and we don't let people use the F word? Is that not a reasonable and viewpoint neutral kind of a restriction that you could use in a non-public forum? Well, again, I'm aware Your Honor knows this, but I just have to emphasize that's not an issue that's briefed before the court. There are no facts, etc. I really am just trying to figure out how much turns on how we answer the threshold question here. Yes, Your Honor. Well, again, the license plate itself does not display the entire F word. And in the District of Delaware case, the Overington case, they dealt with a license plate that had F cancer as the statement on that license plate. And it found that it was actually protected under the First Amendment in a public forum analysis. So whether or not Mr. Waitley prevails, it's at least colorable for him to proceed under a First Amendment standard and be allowed to make those arguments in the District Court. And that also, the legal standard under which these license plate programs are evaluated obviously makes a difference not only to Mr. Waitley, but to any driver who wants to request a personalized license plate in the program. If it is government speech, nobody would be allowed to complain about viewpoint discrimination or anything else. The government could really arbitrarily deny plates and come to any number of invidious determinations about what kinds of plates it's going to issue or deny. So at the end of the day, what you want now is a holding that this is not government speech and a remand for a public forum analysis. Yes, Your Honor. I think Mr. Waitley has, you know, would like to develop facts both about the nature of the forum, because that's... I'm not hearing for some reason. Just repeat that sentence. Absolutely. Can you hear me better now? Yes. Mr. Waitley would like to develop facts both about the public forum analysis, the level of public forum that is at issue here, and I think another factually based determination that would be relevant is whether the government is equally enforcing its guidelines against all speech. So, for instance, if the F word is allowed in certain kinds of license plates, but is only censored when it criticizes law enforcement, that could be an issue of viewpoint discrimination that depends on a full record in order to uncover. But the District Court didn't get into any of that, and we don't need to either. I know, Your Honor. But, again, it's another reason why remand would be appropriate here with instructions to reconsider under the correct legal standard. On the control element, I'd just like to emphasize a few more differences between this case and Walker. One is that the driver here requests that the license plate character combination be displayed and that the character combination disappears as soon as that driver stops wishing it to be displayed. That's different from the Walker designs, where the government actually took ownership of the designs in question, continued to offer them prospectively to any driver who requested them, even if the third party who submitted them went out of business or subsequently wished that they hadn't submitted the design. Ownership had transferred, and the government was making its own speech by making those statements. In addition, the post-publication enforcement that happened here is different from the kinds of government speech cases where the court has found government speech. In those cases, on the front end, the government was very careful to consider what it was saying and restrict its review before issuing the statements. Here, Mr. Waitley's requested license plate was actually issued to him three separate times. First, when it was initially requested. Second, when he requested that they fix a typo in it, which omitted the ampersand that he wanted. And a third time, when the government failed to notice that it had put in a hold order on the plate itself. And if the government is really claiming that it has a compelling interest in expressing a message or a view through these license plates, this kind of loosey-goosey issue-it-first and wait-for-public-complaints posture is simply incompatible with that interest in the government making a statement. With that, I'm happy to assist the court on any other questions. Thank you very much. Rebuttal time. Mr. Taylor. Good morning. My name is Trent Taylor and I'm here today on behalf of Appellee Gerald Lackey in his official capacity. And there are a few points I want to make and obviously answer any questions that you have. But as a preliminary matter, we ask that the court affirm the district court's decision which we think was a very well-reasoned and thoughtful decision. Let me start with this. A license plate is not a bumper sticker. Unlike a bumper sticker, the license plate belongs to the Commonwealth. Literally. Virginia Code 46.2-713 says so. The license plate contradicting this point that opposing counsel just made, the license plate always is owned by the Commonwealth. I don't see why that looms so large for you. I mean, all of these public forum cases are about government property that has been opened in some sense to at least a contribution by private individuals and to what the kind of speech that takes place on that government property. So how much I'm not really seeing how far that advances the ball. I think it advances the ball in the sense that there's sort of this, it goes to the control point I think, which is one of the factors and the simple fact that the Virginia Code indicates that the license plate is owned at all times that it's by the Commonwealth, is furnished and issued by the Commonwealth and that the Commonwealth has the ability to not only recall it, but also repossess it. So they can actually go to someone's house and unscrew the plate from their car and take it back. That's control. And I think that Well, how's that any different than a more traditional public forum analysis where the government just closes the forum? Well, I think that one of the points that I think is important and sort of a distinction here from some of the other cases is that the registration numbers on the license plate, they have their own functional purpose. And that is speech in and of itself. Can I tell you what concerns me about this line of argument, which I really do understand basically these are government property, they're government IDs they serve a government function, they're highly regulated and so the public is going to associate everything on these plates with government speech So that is exactly, almost word for word, the argument that the Supreme Court rejected in that whole line of equal access cases in schools, where it was the same argument. These schools it's government property, they serve a government function, they are heavily regulated, it is a complete government enterprise. So of course any speech that takes place in the midst of that government enterprise is government speech and it will be understood that way by the public. And in every single one of those cases Widmar, Lamb's Chapel, Rosenberger, the Supreme Court said that is wrong. Even in the midst of this highly regulated government enterprise if the government allows for sort of individuals to contribute to what is said that's private speech and the public will understand it that way There's a big difference between the government just allowing people to speak in the midst of a government enterprise and the government itself speaking. And so I don't see why those cases don't kind of control here. Sure, and let me answer that first of all by saying those cases come after a finding that a public forum has been opened up. That's sort of the second point that we don't really get to here, at least it's our position that we don't get to because it is government speech. So there's a finding that it's government speech you never actually get into those other... But why didn't the government open the forum in this case by creating the Vanity License Plate Program? It clearly had a financial incentive, it's raking in millions of dollars, I don't say raking it is getting the taxpayer money support. The government made a decision. We're opening up to the public for a price the right to participate in how the license plate is configured so why isn't that the government opening up the forum? Because the registration numbers can be seen on two levels and the first and most important level is it identifies who the driver of the vehicle is. And that doesn't change. That's regardless of whether it's a personalized plate or a standard issue plate. And there's a hit and run. The law enforcement can say, oh it was this particular vehicle because this is the registration number on there. There's an amber alert. There's toll enforcement. There's lots of reasons why that's there. And that doesn't change regardless of whether an individual chooses which particular combination. There's expressive content certainly you have to agree that there is expressive content being exercised in this Vanity License Plate Program. And the government has allowed it to continue. Because it's financially profitable. So two points on that. First of all I think it's pretty easy to overstate how expressive one can be within the limitations of the personalized license plates. And they're not saying, oh you can say whatever you want within this space. You have seven and a half characters. You can use letters, numerals, and then three special characters. And that includes some of the more interesting ones like an asterisk or dollar sign or anything like that. Well how is this any different really than TAM? The Supreme Court in TAM found it very significant that you had two million trademarks. And you're certainly going to know what a trademark is and identify that with the particular company individual industry. And the government said well there can't be two million expressions of government speech. And here we have a million. It just seems like you can't get around the analysis of the Supreme Court in TAM in this case. Here's what I would say on that particular point. So I just want to note obviously that Walker involved license plates. And much of the analysis in Walker was not on the specialty part but on the license plate as a whole and the historical use. Well the majority in Walker said we're not dealing with specialized plates. They were very specific. We're dealing just with the specialized plates, not the personal plates. And then the Supreme Court went on in TAM to say Walker is the, this is the outer wall of government speech. And I would say, well first of all let me address that point and then I want to address the Mattel or TAM case. So the outer bounds language, first of all that was dicta. And second of all. I'm sorry I just didn't hear what you said. It was dicta. And some of the district court decisions that have ruled. So of the last five district court decisions that have come down on this issue. The Supreme Court doesn't like it when we ignore their dicta. That may very well be true. Of the last five district court decisions that have come out on this issue since 2022, since the Shurtleff case, four have found government speech. And it would be our position that this case is stronger than in Walker. Because in Walker there was some question about whether the state was expressing a message through a license plate design, whether I'd rather be golfing specialty plate was really serve some kind of function. Here I don't think there's any question that the registration numbers do serve a function and they are speech as defined by a number of courts. But to get back to, and so what I would say is if Walker is in fact the outer bounds, if it's the upper deck of a stadium on this issue, we are firmly within the stadium and even on the pitcher's mound. Because of the chief purpose of the registration numbers having, being to identify the vehicle. Now to address the Mattall point, it's our position that Mattall is quite different here. And I think it's important to first of all note that of the three factors that the Supreme Court has said should be analyzed here, the court found that all three factors win against government speech. And for instance on the history point in the Mattall slash Tam court I think the Supreme Court likes to call it Tam, I think in our briefing we use the Mattall, but it's the same case. There the Supreme Court said that trademarks have not traditionally been used to convey a government message. And it contrasted that with Walker which said license plates, not specialized license plates, but license plates are not traditionally public forms for private speech and Texas license plates have traditionally been used for government speech and are primarily used as a form of government ID and bear the state's name. That's what Mattall said. Now on the second factor, which is the public perception, Mattall said that there is no evidence that the public associates the content of trademarks with the federal government. And it contrasted that with Walker which says Texas license plate designs are often closely identified in the public mind with the state because Texas license plates are essentially government IDs and issuers of ID typically do not permit the placement on their IDs of messages with which they do not wish to be associated. And then on the control front, which is where most of the analysis was in the Mattall slash Tam case the court noted that the government does not edit the marks at all and that registration is mandatory unless it runs afoul of the disparagement clause. And that was sort of the issue there. But I don't understand how this case, I always thought that the third prong of the Tam case was very difficult for you because the argument there was look, they screen for disparagement and that shows control. Like they have editorial control over these marks. And that seemed to me very parallel to the argument you're making that look, we screen for obscenity and excretory functions. And so we have the same kind of editorial control. And if that wasn't sufficient in Tam why is it sufficient here? Well, I certainly recognize at a surface level that it's easy to sort of say, yeah, it's pretty similar. But I think if you actually look into it a little bit more, I think it is quite a bit different. And part of that's because the, on the trademark front the PTO makes clear that registration does not constitute approval of a mark. It's really only on disparagement whereas the control that the DMV exercises here they first of all can find the possible combinations of characters and they really do edit and shape the message because if you're trying to put in what you want for your personalized plate, it will reject it. And there's a pre-screening process that will not allow you to select any number of combinations. That's different from Tam because there was no sort of pre, you could, in Tam you can get a mark whether or not it's disparaging. Well, it's reviewed but it's really reviewed on a very narrow basis which is just disparagement. Whereas here we have the guidelines which identify any number of reasons and certainly I know that the other side has tried to minimize those, but it certainly goes beyond disparagement. I mean, I think that what I find very hard about this factor, I guess, and I think what the court was kind of reacting to in Tam where they said, look, the fact that you screen for disparagement doesn't really answer the question here. And the question we're trying to decide, right, is whether the government is speaking on its own behalf through a third party or whether the government is regulating the speech of third parties. And so it's hard for me to see how the fact that the government is regulating the speech answers that question. I mean, it could either be that the government is screening to make sure that its message is being conveyed through the third parties or that the government is regulating third party speech. Do you see what I'm saying? It's almost kind of circular. So I read Tam to be saying, look, we need the kind of regulation that is indicative of the government kind of setting the message and then making sure third parties are conveying it properly versus this is just the government regulating third party speech, which it's not supposed to do on a viewpoint basis. I understand your question and the point, but I do think it is really important this idea that the registration numbers themselves are speech. And I think that makes that different because both Simone and Walker sort of dealt with the situation. Frankly, this, the graphics case, which was unpublished in this court, dealt with the case where there's another private party So whoever has a cell phone on, turn it off or the marshals will come get it. I'm sorry, go ahead. That private parties sort of created the content and then gave it to the government. And someone in particular said, look, there can be different interpretations of a message, but if it's government speech in the first instance, that ends the inquiry. And it's our position that because the registration numbers are in fact speech, they convey information, they communicate a message, otherwise why would they exist? That that makes it different from the rest of these. And we cite to the Universal City Studios case for that front, the Bernstein case, which talks about computer source code, but I also wanted to mention the Sorrell v. IMS Health Supreme Court case, which held that prescriber identifying information as speech for First Amendment purposes. And there the court rejected the view that mere disclosure and dissemination of information is not speech protected by the First Amendment. So I think that's an important point, an important distinction between this case and some of the rest of them. And I think the district court decisions that, like I said, four of the five have come out in favor of the government speech over the last few years, they all make that distinction. And that's what differentiates their holdings from some of the other district court cases that have held. While I have you, can I just ask you a question that is, I guess, the mirror image of the one I asked your colleague. I am just really thinking a lot about how there are sort of two questions in this case. Is it private speech? And then if so, can it be restricted the way the state did here, consistent with public forum doctrine? And I guess I'm just curious. So Virginia wants to kind of take ownership of, what is it, like 900,000 personalized plates running around? Like, the state's position is, no, that's our speech. So for one year, we were telling everybody FTP. That was Virginia speaking. And we also want to claim as our own all 900,000 of these messages. Why wouldn't it be a little bit easier just to say, fine, it's private speech but we win under the public forum analysis? Well, I think they do take ownership of it, but not the message that's FTP. They take ownership of, this is the vehicle. If you don't take ownership of the FTP message, I don't understand how it's government speech. Isn't that the very definition of government speech? This is the government's message and it's being conveyed by a third party. The government is allowed to send its message through a third party. This is where I think the guidance in some of them is very helpful, because it's said and sort of dealt with this situation where you have a public monument and different people may take away different messages from it. And I think that's what's happening here, because... So it is your speech, but FTP could mean a whole bunch of different things, so you don't have to take ownership of all of the possible messages, is what you would say. And FTP, when I first saw the license plate, I didn't know it was a personalized plate, because there's no distinction between personalized and non-personalized plates on a Virginia license plate. And I just assumed it was randomly selected. And I think that's what most people would likely think. And the chief purpose of that is to say... So why would the public think that a plate that has Tom or Mommy, that that's government speech? The government speech is, if this person is in a hit and run, or they go through a toll, then the driver of this vehicle that can be identified as TOM, that's who will get sent the photo toll enforcement. Or the officer who radios in, this is the person who did the hit and run. I got asked this before. I don't see the difference between that and the trademark. I mean, you can identify where the trademark came from. The trademark, I think, if you look... And like I said, I understand that point on a surface level. But I think if you actually go through and look at the distinctions where there is no ownership of a mark, the government never takes ownership of a mark. Whereas here, the license plate is very tightly controlled in every form and fashion, including the fact that they have their own review board, a 10-member review board, that determines when a plate can be recalled. So I think there is distinctions between Tom and here, and that Walker is much closer and really governs this case. I see that my time is up. Thank you, Your Honors. We ask that you affirm the district. Thank you, Mr. Taylor. Mr. Callahan, you've got some rebuttal time. Thank you, Your Honor. Just a few points in rebuttal. To begin with, while the recent trend that opposing counsel spoke of does have some district courts going against a finding of private speech for these personalized license plates, the overall majority of the courts to consider the issue is still in favor of a finding of a public forum for private speech here. So I wouldn't want to misrepresent the weight of the authority as going against a finding of private speech here. That is what the majority of the courts to consider this issue have found, even after Walker was issued. In addition, while Walker depended on the governmental ID context and the license plate context for some of its holdings and considered that, it did not make a bright-line rule that all government IDs or all license plates were government speech. It considered all three of the factors under the government speech doctrine, specifically about the slogans and graphics at issue in that case. We're asking the court merely to follow that precedent and examine the specifics of the personalized license plate program in this case. Just like Shurtleff moved from a general history of flag-flying programs generally to the specific flag-flying program at issue in that case and found that that factor did not favor the government under the more specific analysis. Opposing counsel attempted to distinguish the trademark registry in Mattel on the basis that the government did not edit trademarks and that there was mandatory registration. We would submit that that's the same fact pattern here. The pre-screening, the automatic pre-screening that does not allow people to request certain numbers is no different from the automated filters that the Seventh Circuit considered in the Krasnoe v. Mnookin case we cite to. In that case, it found that those kinds of filters were compatible with the finding of a public forum for the Facebook comments section that was at issue in that case. Mandatory registration is similar here, too, because once compliance with the guidelines has been established, the government has stated that it just issues the license plate. There's not the kind of walker situation where they invite public comment and consider and make discretionary determinations about which license plate character combinations to issue. On the dry technical speech point we've mentioned in our brief, the Supreme Court has never held that private speech is coextensive with government speech. In fact, there's good reasons why it would not be coextensive, because the government speech doctrine itself, operating as an exemption from the First Amendment, threatens to swallow the entirety of First Amendment protections for private speakers if it's allowed to go there. And the kind of function of the random alphanumerics issued by Virginia in its license plates is not technical information that would allow a party to, you know, that would change meaning when those letters and numbers were moved around. In fact, Mr. Waitley's reissued license plate that came up during the mootness briefing here had a different series of letters and numbers than the initial one that he was issued by the state of Virginia, which was TAG 7019. That did not affect the government's ability to identify his vehicle, and therefore the government's interest in any specific message through those character combinations is minuscule. The opposing council also offered that he did not know that this was a personalized plate when he first saw it and thought it might have been issued by the state. We submitted in our briefing that most reasonable observers would be able to tell because Virginia issues in a very strict pattern three letters and a series of numbers that are random and only occasionally intersect with certain English words. Most observers would be able to determine whether a personalized character combination is present and a state-issued one is present. And to the extent that that's at issue in this case, on the motion to dismiss posture of this case, all facts and factual inferences should be resolved in favor of Mr. Waitley and his ability to develop a record during discovery in the case. If the Court has no further questions, I'll rest on my briefs for the remainder of the argument. All right. Thank you very much. We're going to come down and greet counsel, and then we're going to take a very short recess. This Honorable Court will take a brief recess. Thank you. Thank you.
judges: G. Steven Agee, Pamela A. Harris, Barbara Milano Keenan